RAWLS, Judge
(dissenting).
I am compelled to dissent.
The issue in this criminal proceeding is whether appellant-defendant, Nancy Hirsch, committed perjury in knowingly and falsely testifying that she saw Eugene T. Whit-worth, Assistant State Attorney, “. . enter the jury room during the jury’s deliberations at the trial of the cause between the State of Florida as Plaintiff and Janice Yvonne Harvey as Defendant on the afternoon of 17 December 1969 at the Alachua County Courthouse, Gainesville, Florida
At the outset the State adduced a classic case in proof of Hirsch’s guilt. The State established that Nancy Hirsch executed an affidavit that she had seen Whitworth enter the jury room during the petit jury’s deliberations on December 17, 1969; and that on March 11, 1970, she had testified extensively as to such material fact when the trial court was considering a motion for new trial in the Harvey case. Next, the State called the bailiff who had been in charge of the Harvey jury and he testified that Whitworth did not enter the jury room on the subject date. The next witness for the State was the judge of the Harvey trial who testified that the question of Whitworth’s presence in the jury room could have influenced his deci *444 sion in passing upon the motion for new trial, although he denied same. Following the foregoing predicate, the State called each of the six jurors constituting the jury panel in the Harvey trial and each juror positively and unequivocally testified that Whitworth had not entered the jury room. The State hammered the final nail on the lid of this case by calling Whitworth who testified that he did not go into the jury room on the subject date.
But, the State was not content. It then rocketed into the space of extraneous matters to such an extent that the trial evolved into a ladies’ sewing circle gossip session over the continuous strenuous objections of defense counsel. At this stage the State called one Beverly Ann Jones who testified that she was the sister of the victim in the Harvey case; that on December 18, 1969, Janice Harvey telephoned her and she then talked to a person who identified herself as Connie Canney;[1] that this person asked her if she would get the witnesses in the Harvey trial to change their testimony because Janice Harvey had a young baby to take care of and “they” did not want 'her to go to jail. She further testified that she made a note of this person’s telephone number;[2] told the person to talk to her mother; did not know and had never seen Hirsch until the instant trial; and understood that “they” used in the telephone conversation meant Janice Harvey and the other person to the telephone conversation who identified herself as Connie Canney.
The State then called Mrs. Alberta Daniels, the mother of Beverly Ann Jones and Paulette Daniels Baldwin (Paulette was identified as the victim of the aggravated assault charged in the Harvey trial). She testified that a person identifying herself as Mrs. Canney telephoned her and advised that she had called Mrs. Daniels’ daughter, and further testified as follows:
“She asked me to have the witnesses to change their stories concerning about Janice Harvey because they were asking for a new trial and she had this small baby that she had to take care of and she asked me if I would get my daughter and the other witnesses to change their story. This is what the party told me. Now, do you want to know what I told her?
“Q. Please.
“A. I told her that I was sorry but I couldn’t afford to do anything of that sort because they had got on the stand and solemnly swore they would tell the truth. If I would do something of that sort it might affect the children.”
This witness then testified that she reported this telephone conversation to the State Attorney; that she had not known or seen Nancy Hirsch until the instant trial; that the person identifying herself as Mrs. Can-ney told her “that she would be to my house and talk with me and we could make some arrangements[3] . She never did come.” [4]
I pause to note that the testimony above reviewed sustains the majority’s observation that some person identifying herself as Mrs. Connie Canney attempted to suborn perjury in the Harvey trial. However, the cited extraneous testimony does not in any imaginable manner constitute relevant evidence as to Nancy Hirsch. Risking redundancy for emphasis, it is once again observed that the above testi *445 mony amounted to witnesses saying: “Someone telephoned me and told me so- and-so but that person was not the defendant, was not in the defendant’s presence, nor was the defendant in my presence. In fact, I did not even know the defendant.”
The link between Mrs. Canney and Nancy Hirsch was attempted to be proven by the State’s offering of testimony that: (1) Mr. and Mrs. Canney visited the Public Defender’s office and inquired if testimony that a witness had observed a prosecuting attorney go into the jury room was given, would such testimony be material evidence as to a motion for new trial, and later furnishing Nancy Hirsch’s name as a witness for proof of this incident; and (2) after voluntarily surrendering and being booked at the jail on the instant charge of perjury, Nancy Hirsch was released on bond, two deputy sheriffs followed her, took a photograph of her automobile which she had parked in front of the Canney residence, and the photograph was admitted into evidence.
The majority states that the “overriding theory of the State’s case was coupling the actions of one Mrs. Connie Canney in her attempts to suborn perjury in the Harvey trial, and the influence of Mrs. Canney on the appellant thereby theorizing that the appellant, at the probable suggestion of Mrs. Canney, had committed perjury in her attempt to help Mrs. Canney to help Mrs. Canney’s friend, Janice Harvey.” (Emphasis mine.) This statement speaks for itself. Citizens are not sentenced to prison by a court of law in this republic upon “theorizing” or “the probable suggestion.” Such evidentiary predicate is more cognizable in the courts of a totalitarian power.
The authorities are in accord that the minds of jurors must not be poisoned and prejudiced' against the prisoner by receiving evidence of another collateral crime committed by a defendant not on trial. It is imperative that the issue be isolated and maintained as the “feature” of the trial. Here, the issue is crystal clear, viz.: Did Nancy Hirsch commit perjury when she swore that she saw a prosecuting attorney enter the jury room on December 18, 1969? The issue was not: “Did Mrs. Canney commit acts which constituted the crime of subornation of perjury.” Are the telephone conversations of some person with witnesses who have no connection with the defendant, or the offense charged, logically probative ? I submit they are not. Thayer stated the basic concept as to relevance in its classic form: [5]
“. . . The two leading principles should be brought into conspicuous relief, (1) that nothing is to be received which is not logically probative of some matter requiring to be proved; and (2) that everything which is thus probative should come in, unless a clear ground of policy or law excludes it.”
Phillips stated the elementary test at the outset in his treatise on the law of evidence during the early part of the 19th Century as follows: [6]
“The parties to a suit are not permitted to adduce every description of evidence which, according to their own notions, may be supposed to elucidate the matter in dispute; if such a latitude were permitted, evidence might be often brought forward which would lead rather to error than to truth, the attention of the jury might be diverted by the introduction of irrelevant or immaterial evidence, and the investigation extended to a most inconvenient length. In order to guard against these evils, certain rules for limiting and regulating the admissibility of evidence have been established, from time to time, by the judges . . .”
*446 Thayer, in treating the common law of evidence as a rational system, gives us the following commentary:[7]
“. . . There is a principle — not so much a rule of evidence as a presupposition involved in the very conception of a rational system of evidence, as contrasted with the old formal and mechanical systems — which forbids receiving anything irrelevant, not logically probative
Wharton, in defining evidence, states:[8]
“Blackstone defines evidence as signifying ‘that which demonstrates, makes clear, or ascertains the truth of the very fact or point in issue either on one side or the other.’ As a term of judicial procedure, ‘evidence’ embraces the reproduction, before the determining tribunal, of the admissions of parties and of facts relevant to the issue . . .”
Professor Wigmore pinpoints the subject here considered as follows: [9]
“These reasons, it may be noted, represent general policies and constant quantities in our law of Evidence, and reappear individually in other parts of it. For example, the third — but not the first or the second — reappears in the use of particular misconduct against a witness; but it is there allowed to be satisfied by forbidding extrinsic testimony, while admitting judgments of conviction and cross-examination of the witness himself . . . Again, the third reason finds an analogy in the law of criminal pleading, in the rule that on an indictment charging only a single offence the issue must be confined to that offence, and no election is allowed to lay before the jury a number of such offences from which they are to select the one best proved.” (Emphasis supplied.)
Wharton, in his treatise on criminal evidence, sets out the rule applicable here as:[10]
“Generally, evidence of acts of the defendant involving persons other than the victim is inadmissible as irrelevant, the basis for the exclusion being characterized as res inter alios acta.”
Even in a case of conspiracy, which we do not have here, Wharton states: [11]
“The rule is well established that the conspiracy itself cannot be shown from the acts and declarations of one co-cen-spirator in the absence of the others
The foregoing principles enunciated in the treatises have stood the test of judicial decisions and are so fundamental to our system of jurisprudence that further quotations would only serve to unduly prolong this already lengthy dissent. See, 22A C. J.S. Criminal Law § 746. I would reverse for a new trial.

. When called by the defendant, Connie Canney denied any such conversation.

. Great emphasis was placed on this telephone number by the State. A xeroxed copy was subsequently introduced into evidence after it was established that the law enforcement officers had lost the original. It was proven that the telephone number was that of Mrs. Canney.

. The rankest of hearsay.

. No testimony was adduced as to either Beverly Ann Jones or her mother, Mrs. Daniels, knowing Mrs. Canney or being able to identify her voice.

. Thayer, A Preliminary Treatise on Bvi-dence at the Common Law 530 (1898).

. 1 Phillips on Evidence 3 (4th Am. eel. 1859).

. Thayer, A Preliminary Treatise on Evidence at the Common Law 264 (1898).

. 1 Wharton’s Criminal Evidence 3 (11th ed. 1935).

. 1 Wigmore on Evidence 651 (3d ed. 1940).

. 1 Wharton’s Criminal Evidence 304 (12th ed. 1955).

. 1 Wharton’s Criminal Evidence 357 (12th ed. 1955). *455 in twenty days why his lien should not be enforced by action or vacated and canceled of record. Upon failure of the lienor to show cause why his lien should not be enforced or his failure to commence such action before the return date of the summons the court shall forthwith order cancellation of the lien.”